BENJAMIN LUCAS *vs.* WILLIAM TRUMBULL.

The declarations made to his own family by one of the parties to a contract, immediately before and after making the contract, not in the presence of the other party, are not competent evidence against that party of the terms of the contract.

If one hires a horse to go to a certain place and drives him beyond that place, it is a conversion of the horse, and the hirer is liable for all damages subsequently occurring, although arising from the fault of the horse.

If, after a conversion of property, an injury occurs to it and the owner then receives it back and sends in his bill for the repairs and use, which is not paid, it is still a question for the jury, whether under all the circumstances the tort has been waived.

The rule of damages for the conversion of a horse and carriage, which have been returned to the owner and received by him, is their market value at the time of the conversion, less their market value at the time of the return.

ACTION OF TORT for the conversion of the plaintiff's horse and carryall. Trial at January term 1859 of the superior court of Suffolk, before *Nash*, J.

The plaintiff's evidence tended to show that the defendant hired the horse and carryall to go to Mount Pleasant and back, for two dollars; but, besides going to Mount Pleasant, drove on to Mount Auburn, where the horse ran away, and overturned and injured the carryall; that the plaintiff, being informed by the defendant of the accident, and of the place where the horse and carryall were, sent and got them, had the carriage repaired, and brought in a bill against the defendant for the amount of the repairs, and three dollars for the hire, which the defendant refused to pay; and that the plaintiff, at the time of the contract of hire, said that the price for the afternoon would be three dollars.

The defendant testified that he hired the horse and carryall fır the afternoon, and detailed the terms of the contract with the plaintiff; and offered in evidence his own declarations, made to his family immediately before leaving his house to go to the plaintiff's stable, that it was his intention to hire a horse and carriage to go to Mount Auburn; and also his own declarations, made to his family immediately after returning to his house from the hiring, that he had hired a horse and carriage to go to Mount Auburn. But the judge excluded these declarations.

The defendant offered evidence tending to show that the horse was vicious and unsteady, that the accident was owing to the fault of the horse, and that the defendant was in no respect to blame; and contended that if the accident was caused by the inherent viciousness and fault of the horse, the defendant was not liable. But the judge, leaving it to the jury to find what the terms of the bargain were, instructed them that if the defendant passed out of and beyond the route stipulated, he converted the property, and it was thereafter at his own risk, he was liable for all damages subsequently occurring, however caused, and proof that the accident was owing to the fault oʼ the horse would not exonerate him.

The defendant requested the court to instruct the jury, that "if the jury find that both the parties contracted that the defendant should only g as far as Mount Pleasant, and he wen⁺

farther, the tort was waived by the subsequent acts on the part of the plaintiff in assuming the ownership of the property, by sending for it, and by presenting a bill for the damage done and for the hire at the price for the whole afternoon." But the judge declined; and ruled, that whether the plaintiff had waived the tort or conversion, and assented to the Mount Auburn route, was a question of fact to be determined by the jury on all the evidence; and that the circumstances stated in the request were evidence of such assent and waiver, to be considered in connection with all the other evidence in the case.

The defendant also requested the court to instruct the jury that the rule of damages was the actual cost of putting the carriage in a roadworthy state; and that the plaintiff was not entitled to recover for any indefinite strain or injury. But the judge instructed the jury, that the horse and carryall having come back into the possession of the plaintiff, the rule of damages was their value at the time of the conversion, less their value on their return to the plaintiff's hands; that in determining said deteriorated value it was competent for the jury to consider among the elements of the damage, not only the actual cost of putting the carriage in a roadworthy state, but also any injury to the paint or to the gloss of the leather, or to the general looks of the carriage, so far as such injury diminished the fair market value of the carriage; and that so far as the horse was injured from thus having run away, and thereby rendered of less value when returned, that was a proper element of damage for their consideration.

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. Lathrop*, for the defendant. 1. The declarations of the defendant, made on the day of the contract, part immediately before its completion, and part while it was in full force and operation, and at a time when no question was made as to the contract, so that there could be no suspicion that the defendant was manufacturing evidence for himself, should have been admitted as part of the *res gestæ*, and as showing his intention in entering into the contract. 1 Greenl. Ev. § 108. *Boyden* v

*Burke* 14 How. 575. *Tompkins* v. *Saltmarsh*, 14 S. & R. 275. *Allen* v. *Duncan*, 11 Pick. 308. *Hersom* v. *Henderson*, 3 Foster, 498. *Thorndike* v. *Boston*, 1 Met. 242. *Kilburn* v. *Bennett*, 3 Met. 199. *Burnham* v. *Rangeley*, 1 Woodb. & Min. 7. *State* v. *Ridgely*, 2 Har. & McHen. 120.

2. The acts of the plaintiff, in assuming the ownership of the property by sending for it and by presenting a bill for the damage done, and for the hire, at the price for the whole afternoon, were in law a waiver. *Rotch* v. *Hawes*, 12 Pick. 136. *Fox* v. *Harding*, 7 Cush. 520. *Turner* v. *Twing*, 9 Cush. 512. *Cobb* v. *New England Mutual Marine Ins. Co.* 6 Gray, 204. *Hall* v. *People's Mutual Fire Ins. Co.* 6 Gray, 185. *Ransom* v. *New York*, 20 How. 581. *Dale* v. *Radcliffe*, 25 Barb. 333. *Goit* v. *National Protection Ins. Co.* 25 Barb. 189. *Shaw* v. *Turnpike Co.* 2 Pennsyl. 461. 2 Parsons Marit. Law, 481, note.

3. Evidence of the disposition and character of the horse should have been admitted; because letting a vicious horse of this nature is a wrongful act, and if the plaintiff cannot maintain his action without showing such a letting, or this fact appears in evidence, he cannot recover for the conversion; Story on Bailments, § 383; *Gregg* v. *Wyman*, 4 Cush. 322; and because the horse having come again into the possession of the plaintiff, the defendant is not responsible for damage done by the fault of the horse. *Johnson* v. *Weedman*, 4 Scam. 495. 1 Hilliard on Torts, 250, note.

4. The rule of damages was the amount required to put the carriage in a roadworthy state, and no allowance should have been made for any indefinite strain. *Sage* v. *Middletown Ins. Co.* 1 Conn. 239. *Peele* v. *Suffolk Ins. Co.* 7 Pick. 254. *Orrok* v. *Commonwealth Ins. Co.* 21 Pick. 456. *Giles* v. *Eagle Ins. Co.* 2 Met. 140. *Harrington* v. *Lincoln*, 4 Gray, 563. *Schooner Catharine* v. *Dickinson*, 17 How. 170.

*B. Dean*, for the plaintiff.

Dewey, J. 1. The declarations of the defendant to his own family, at his own house, of his intention to hire the horse and carryall for a given purpose, and his subsequent declarations that he had hired the horse and carryall to go to Mount

Auburn, were properly rejected, on the objection of the plaintiff. They formed no part of the evidence of the actual contract made elsewhere with the plaintiff.

2. The terms of the bargain being a subject of controversy at the trial, the court properly left it to the jury to find what the terms of the bargain were, with the instruction that if the hiring was to go to a certain place and the defendant drove to a greater distance and beyond that place, that was a conversion of the horse and carryall, the defendant was liable for all damages subsequently occurring, and proof that the accident arose from the fault of the horse would not exonerate the defendant.

3. The court properly declined to give instructions to the jury that the tort was waived by the subsequent acts of the plaintiff in taking into his possession the horse and carryall, and presenting to the defendant a bill for the amount of repairs upon the carryall and a charge of three dollars for the hire of the horse and carryall. The present case differs from that of *Rotch* v. *Hawes*, 12 Pick. 136. In that case the owner of the horse had, with full knowledge of the conversion, received payment for the use of the horse for the whole distance travelled, and it was held that such receipt of payment was a waiver of the right to recover damages for improper driving of the horse while thus in his possession, by an action of trover for a conversion of the property. We do not understand that any such payment was received here. The defendant did not put himself in the position to insist upon a waiver of the tort. The ruling of the court, submitting the question whether the plaintiff had waived the conversion and assented to the use of the horse and carryall for the Mount Auburn route to the jury, as a question of fact upon all the evidence, was sufficiently favorable for the defendant.

4. The ruling of the court upon the question of damages was correct. *Exceptions overruled.*